## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA,
## WESTERN DIVISION

IN RE:                                                                                      BK 06-71104-CMS-13

**JESSE DUNN,**

         **DEBTOR.**

### MEMORANDUM OF DECISION

This matter was before the court on creditor RH & MR Investments' (RH & MR's) motion to dismiss Jesse Dunn's Chapter 13 case; or, in the alternative, for relief from stay to take possession of the Dunn home. The court has reviewed the record in the context of applicable law and finds creditor's motion is due to be conditionally **DENIED**, depending on Dunn's strict compliance with the terms of this order. A failure of compliance will result in the automatic lifting of the 11 U.S.C. § 362 stay without further action by this Bankruptcy Court.

### FINDING OF FACTS

The court heard testimony and took evidence on this dispute at a September 21, 2006 hearing on RH & MR's **MOTION TO DISMISS OR IN THE ALTERNATIVE FOR RELIEF FROM STAY AND CO-DEBTOR STAY** (BK Doc. 18). This contested matter and the debtor/creditor relationship arose out of a document captioned "Bond for Title" entered into between the parties on July 19, 2000. Document 18 sets out a detailed chronology of events which have occurred since July, 2000. Many of these facts were testified to without dispute at the subsequent hearing.

On September 21, 2006, Allison Tatum, an employee of the creditor; and debtor Jesse Dunn both testified. A copy of the "**BOND FOR TITLE**" was admitted into evidence. Pursuant to this agreement, RH & MR agreed to sell to Jesse Dunn, and his wife, Norma Dunn, what is now their home at 5292 Northcliff Drive, Northport, Alabama. The purchase price was $115,000.00 with a $3,000.00 down payment, and the balance paid at $882.00 per month, with an interest rate of 8.75%, over 30 years. The contract stated that payments were due on the first day of the month, with a late charge of $44.10 if payment is not received by the 11th day of each month. The agreement further

1

required the Dunns to pay the ad valorem property taxes on the dwelling, and to provide casualty insurance of at least $100,000.00 on the property, with the creditor named as an additional insured. Upon completion of all payments, RH & MR was to convey title to the Dunns.

The document states creditor's remedies against the debtors if they defaulted at Paragraph 2. Remedies include the following:

> ... Should Second Party (the Dunns) fail to pay any one of said installments on or before the same falls due and such default continuing for thirty (30) days thereafter TIME BEING OF THE ESSENCE OF THIS CONTRACT, this Contract shall, at the option of the First Party (RH & MR) only, be terminated and First Party, their agents or assigns may re-enter upon the property and take possession thereof and that in event, all rights and interests given to Second Party by this Contract shall utterly cease and terminate without any right in Second Party of reclamation for any monies paid or improvements made under this Contract, but all monies so paid shall be and remain the property of the First Party and shall be held and retained by them as compensation for the rent or use and occupation of said property and Second party agrees to peacefully surrender possession of said premises.
>
> First party shall also have the option upon default of the said payment of any installment when due and such default continuing for thirty (30) days, hereunder to be immediately due and payable and may proceed to collect the entire principal balance or to waive the forfeiture of the rights and interests of Second Party in this Contract or default in the payment of any of the installments, but waiver of such shall not be construed as a waiver of any other default occurring subsequently thereto. Second Party agrees to pay all costs of collection, if default is made in this Contract, including any reasonable attorney's fee which may be occasioned or made necessary due to the failure of the Second Party to adhere strictly to the terms of this Contract, and as to all obligations herein contained, Second Party waives all rights of exemption under the Constitution and Laws of Alabama or any other state.

The contract provides no specific remedies for the Dunns' in the event of an RH & MR default.

At some point after execution of the agreement, Jesse Dunn and Norma Dunn separated. The Dunns also failed to make all the house payments called for by the agreement with RH & MR.

In October of 2005, Norma Dunn, the wife, individually filed a Chapter 13 bankruptcy case, ( BK No. 05-73885) with this court. The court entered an order in that case allowing the creditor to proceed with a pending state court action to enforce its rights against the property. Norma Dunn's Chapter 13 was converted to a Chapter 7 liquidation case.

Jesse Dunn testified at the September 21, 2006 hearing in his case that he and his wife were separated when she filed her petition, that he was not aware that she had filed bankruptcy or the status of their payments to RH & MR prior to the couple's reconciliation. He had moved back into the family residence in July of 2006 and learned of the problem with the payments and that RH &

2

Case 06-71104-CMS13    Doc 33    Filed 10/20/06    Entered 10/20/06 15:26:32    Desc Main
Document    Page 2 of 8

MR was seeking to take possession of the house in a suit pending in Tuscaloosa County Circuit Court. A motion for summary judgment in the creditor's favor was set for hearing in the state court action on August 17, 2006. Jesse Dunn filed this Chapter 13 bankruptcy petition on August 16, 2006.

At the time of filing, the Dunns' account was in default from the April, 2005 payment forward. Additionally, RH & MR had paid property taxes totaling $599.64 for the 2005-2006 tax year, because the Dunns had failed to do so. The creditor had also purchased insurance in May of 2006, because it had no evidence that the Dunns had insurance in place. Jesse Dunn said he presented evidence to the creditor in July, 2006, that he had purchased insurance on the property.

Along with his petition, the debtor filed a Chapter 13 plan in which he proposed to pay the prepetition arrearage due under the parties' agreement through the trustee, and to begin paying the regular monthly payments beginning with the September, 2006. Tatum testified that Jesse Dunn came to RH & MR's office on September 20, 2006 (the day before the Bankruptcy Court hearing), and paid $928.00 for September of 2006. The exact amount of the payment due, including late charges, actually should have been $928.10.

Testimony showed that the balance due under the agreement was $118,456.22 in principal and interest as of the September 21, 2006 hearing. The original amount financed was $112,000.00. Dunn's schedules had listed the property as having a value of $117,000.00; nevertheless, he testified at hearing that the home was only worth $92,000.00.

## CONCLUSIONS OF LAW

This court has jurisdiction of Dunn's Chapter 13 case pursuant to 28 U.S.C. § 1334(a). The court has jurisdiction of this core contested matter pursuant to 28 U.S.C. § 1334(b). The jurisdiction is referred to this court under 28 U.S.C. § 157(a) by the General Order of Reference of the United States District Courts for the Northern District of Alabama, Signed July 16, 1984, As Amended July 17, 1984.

3

## I.

**Under Alabama law, a "bond for title" is a contract for the future conveyance of land, and the terms agreed to by the parties generally control.**

The parties have referred to their agreement as a "bond for title" and the document admitted into evidence is captioned "**BOND FOR TITLE**." In 1993, former Alabama Supreme Court Justice Shores characterized the bond for title as "an archaic means to transfer ownership of land", further pointing out that the phrase is a "confusion of terms" since vendors no longer post a "bond" or other security to guarantee transfer of title to the purchaser. See Hicks v. Dunn, 622 So.2d 914, 918 (Ala. 1993) [1] The Supreme Court had already held in Gay v. Tompkins, 385 So.2d 973 (Ala. 1980) that a "bond for title" like that in issue in this case has the legal effect of a contract to convey land.

Whatever perceived flaws the conveyance might have, "bonds for title," or contracts for the future conveyance of the equitable/legal ownership of land, still continue to be used in Alabama. See Halstead v. Windsor, 662 So. 2d 1124 (Ala. 1995); Rogers v. Triple S Ventures, Inc., 752 So. 2d 1220 (Ala. Civ. App. 1999); and Green v. Hemmert. 703 So. 2d 391 (Ala. Civ. App. 1997).

The U.S. Bankruptcy Court for the Middle District of Alabama, referred to the Gay case and to Alabama law on rights under "bonds for title," to hold in Mumpfield v. Leavell (In re Mumpfield), 140 B.R. 578, 580 (Bankr. M.D. Ala. 1991) that:

> It is correct that under the latest decisions of the Alabama Supreme Court concerning contracts for the sale of land, the debtor had no legal interest and no equitable interest in the

---

[1] The Hicks opinion stated the following:

The use of a bond for title to convey land is an archaic means to transfer ownership of land, whose use no longer comports with its original purpose. See Bonds for Title in Alabama, n. 1, supra. "In fact, the reference to a land contract as a 'bond for title' is a confusion in terms. The earliest cases concerned land contracts in which, in addition to the vendor's promise contained in the agreement, the vendor also gave a bond conditioned on his making title to the land when the consideration was paid." Gay v. Tompkins, 385 So. 2d 973, 978 (Ala. 1980). A law review article over 40 years ago concluded that the use of bonds for title in the conveyance of land was intended to avoid excessive costs when purchasing small tracts of land, but that the practice was generally disfavored as dangerous and unsound because it is more likely to result in litigation than the use of a mortgage transaction is. ... The use of a bond for title to convey land should be carefully considered if not entirely abandoned.

Hicks, 622 So. 2d at 918.

4

property under the contract for sale. She simply had a contract which would permit her to draw the legal title to the property to her upon completion of all payments under the contract.

In 2004, the U.S. District Court for the Middle District of Alabama also held that "under Alabama law, the only right possessed by the lessee is the equitable contractual right of specific performance, to force the seller to present him with title upon his completion of his contractual obligations." See Taunton v. Reding (In re Taunton), 306 B.R. 1, 3 (M.D. Ala. 2004). Judge Thompson also held that in the bankruptcy context, such an agreement is an "executory contract" that must be either accepted or rejected by the debtors. Taunton, 306 B.R. at 4. See also Sipes v. Atlantic Gulf Communities Corporation (In re General Development Corp.), 84 F.3d 1364 (11th Cir. 1996) (exploring similar issue under Florida state law); and Health Science Products Inc. v. Taylor (In re Health Science Products, Inc.), 183 B.R. 903 (Bankr. N.D. Ala. 1995).

In Alabama, the contract (bond for title) is clearly not even an "equitable mortgage" nor does it create in the purchaser any "equity of redemption rights" that a mortgage would. See Gay, 385 So. 2d at 980 cited with approval by Halstead, 662 So. 2d at 1126. Enforcement of the agreement exists as a matter in contract only – via suit for specific performance, and/or any other specific remedies in breach in the individual contract. As such, the individual contract controls disputes and their consequences. The outcome of the Dunn/RH & MR issue hinges on the terms of this contract as applied to the evidentiary facts.

## II.

**Barring future default, RH & MR waived its rights to enforce forfeiture or acceleration when it accepted Dunn's payment for September. Its motion must be conditionally denied at this point.**

Applying the law stated above, RH & MR is the sole equitable and legal owner of the Northcliff real estate occupied by the Dunns. The debtor has only an executory contractual relationship with the creditor, which, in bankruptcy, he can either assume or reject under 11 U.S.C. § 365. Debtor's plan, while not stating that he proposes to assume the contract, does propose to cure the default and pay the current monthly payments under the terms of the contract, meeting the Section 365(b) requirements for assumption.

5

Under the July 19, 2000 Bond for Title, the creditor was provided with three alternative remedies on the debtor's default under Paragraph 2:

> 1. Upon a default by the Dunns continuing 30 days or more after the payment due date, RH & MR could terminate the bond for title, re-enter and take possession of the home, keeping everything the debtors had paid up to that point, as well as the real estate.
>
> 2. RH & MR "also" had the "option" upon such 30-day default to accelerate its right to payment of the entire principal balance of the debt ...
>
> 3. "Or" to waive the forfeiture of all of the Dunns' rights and interests in the contract on "default in the payment of any of the installments" with such waiver not to be construed as the waiver of any subsequent default.

As stated in Green v. Hemmert, 703 So. 2d 391, 396 (Ala. Civ. App. 1997):

> However, while forfeiture provisions in lease-sale agreements such as the contract at issue are enforceable, they are not favored under the law. Courts are careful to scrutinize the parties' relationship for any indication of waiver by accepting something less than strict compliance. E.g. Eurton v. Smith, 357 So. 2d 324, 326 (Ala. 1978). A forfeiture provision "will be upheld, nevertheless, when the lessee-vendee has actual or constructive notice that strict compliance is necessary," and waiver of strict compliance is held to be "a question of fact." Hamner v. Rock Mountain Lake, Inc., 451 So. 2d 249, 252 (Ala. 1984). It is undisputed that Mr. Hemmert routinely accepted multiple late payments from Mr. Green to cure prior breaches of their agreement, despite Mr. Green's being consistently three or four months behind. Under these circumstances, the pertinent question is whether the trial court could have found that Mr. Green had actual constructive notice as of January 1995 (when he last caught up his payments) that strict compliance would thereafter be required. ...

In a slightly later case, the Court of Civil Appeals also held that where the contract provided alternative remedies, the vendor/creditor must elect which remedy it will pursue. It stated in Rogers v. Triple S Ventures, Inc., 752 So. 2d 1220, 1222 (Ala. Civ. App. 1999) that:

> "Where an installment land sales contract provides alternative remedies of termination or foreclosure, *Alabama law allows the vendor an election of remedies between the two.* They are said to be '*alternative and inconsistent rights secured by the contract,*' Rogers v. Gonzales, 252 Ala. 313, 315, 40 So. 2d 858, 860 (1949), and the [vendors'] exercise of their alternative right to resume possession of the land and to terminate the contract in light of [the purchaser]'s breach of his covenant to pay monthly rentals is settled. *See, e.g., Nelson v. Sanders,* 123 Ala. 615, 620-21, 26 So. 518, 520, (1899); *Davis v. Folmar,* 203 Ala. 336, 83 So. 60 (1919); *Blocker v. Lowry,* 285 Ala. 448, 233 So. 2d 233 (1970)."
>
> 703 So. 2d at 395-96 (emphasis added; other emphasis omitted). Thus *Green* makes it clear that, in the absence of a waiver, a vendor has the right either to treat a purchaser's default in making installment payments as grounds for rescinding the installment contract (and retaking possession of the land) *or* to treat it as a basis for insisting upon the purchaser's immediate payment of the full amount due under the contract. The first choice puts the contract at an end, while the second necessarily acts as a reaffirmation of the contract.

It appears to the court that the Dunn/RH & MR Bond for Title contract clearly provided a

third alternative to termination/re-entry or acceleration options. A waiver is available under this contract joined, although not in a precisely grammatical way, to the first two alternative "options" by the disjunctive "or". The language of the contract requires the creditor to elect one of these three courses of action upon default.

Debtor Jesse Dunn testified at hearing that he had no awareness of the arrearage owed on the house or of the state court action to regain possession until he moved back into the Northcliff house in July of 2006. RH & MR offered no documentary or testamentary evidence to refute Dunn's contention.

Dunn also testified that on September 20, 2006, he offered RH & MR a $928.00 payment including the installment and late fee for September. Tatum testified that RH & MR accepted the payment (which was 10 cents short). At that time, Dunn's bankruptcy case and proposed plan providing for both arrearage and current payments had been pending more than a month.

The court must find, based on the undisputed evidence, that the creditor elected to waive its right to pursue either of the other two alternative remedies which were available to it on September 20, 2006. That waiver however, under terms of the contract, will not apply to any subsequent default by Dunn.

## CONCLUSION.

Consequently, the creditor's motion must be **DENIED**, conditioned on Dunn's future strict compliance with terms of this Bankruptcy Court order. That order will require that Dunn immediately comply with the proposal he has made in the plan to cure the prepetition arrearage over the term of the Chapter 13 case, and to pay all subsequent regular payments within the month they are due, including any late charges that are due. The court will require future strict compliance with the terms of the contract with RH & MR, including maintenance of insurance, and timely payment of property tax.

Any future failure to comply on Dunn's part will result in the lifting of the stay as to the home without further order of the Bankruptcy Court. This order is effective immediately for the October, 2006 payment – and any late penalties that may be due.

7

The court will enter a separate order which is consistent with these findings pursuant to Fed. R. Bankr. P. 7052.

**DONE and ORDERED** this October 20, 2006.

>/s/ C. Michael Stilson
>C. Michael Stilson
>United States Bankruptcy Judge